ORIGINAL

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Central District of California

FILED
CLERK, U.S. DISTRICT COURT
OCT 28 2019
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES OF AMERICA

v.

RONALD EUGENE PEPPER, JR.,

Defendant.

Case No. **ED19-0583M**

LODGED
2019 OCT 28 PM 3:44
U.S. DISTRICT COURT
CENTRAL DIST. OF CAL.
RIVERSIDE
BY _____

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about September 23, 2019, in the County of Riverside in the Central District of California, the defendant violated:

| | |
|---|---|
| Title 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm or Ammunition |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
Complainant's signature

Paul Kirwan, Special Agent (ATF)
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/28/19

_____
Judge's signature

City and state: Riverside, California

Hon. Kenly Kiya Kato, U.S. Magistrate Judge
*Printed name and title*

AUSA John A. Balla

## **AFFIDAVIT**

I, Paul Kirwan, being duly sworn, declare and state as follows:

### I. **PURPOSE OF AFFIDAVIT**

1. This affidavit is made in support of a criminal complaint and arrest warrant against Ronald Eugene Pepper, Jr. ("PEPPER") for a violation of 18 U.S.C. § 922(g)(1) (Felon in Possession of a Firearm or Ammunition).

2. This affidavit is also made in support of an application for a warrant to search the following digital devices in the custody of the Riverside Police Department, in Riverside, California, (collectively, the "SUBJECT DEVICES") as described more fully in Attachment A:

    a. One Samsung Galaxy S10e Cellular Phone, serial number/IMEI unknown;

    b. One Samsung Galaxy S7 Cellular Phone, serial number/IMEI unknown; and

    c. One Samsung Galaxy S9+ Cellular Phone, serial number RFKB166LGT.

3. The requested search warrant seeks authorization to seize evidence, fruits, or instrumentalities of violations of 18 U.S.C. §§ 922(g)(1) (Felon in Possession of a Firearm or Ammunition) (the "Subject Offense"), as described more fully in Attachment B. Attachments A and B are incorporated herein by reference.

4. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and

witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint, arrest warrant, and search warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. **BACKGROUND OF AFFIANT**

5.   I am a Special Agent ("SA") with the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and have been so employed since May 2017.

6.   I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy.  I am an ATF Interstate Nexus Expert, and routinely examine firearms and ammunition to determine their origins and travel in interstate commerce.  During my time as an ATF SA, I have testified as an expert witness in federal court, participated in multiple different task forces, and assisted in multiple narcotics and firearms investigations.  Based on my training and experience, and on my conversations with other ATF SAs, I am familiar with the investigation of federal firearms and drug crimes.

## III. **SUMMARY OF PROBABLE CAUSE**

7.   On September 10, 2019, ATF SAs and officers assigned to the West Post-Release Accountability and Compliance Team ("PACT") conducted a parole search at PEPPER's residence located at 905 West La Cadena, Space #14, Riverside, California 92501, a trailer where PEPPER lived with his girlfriend and grandfather.

During the parole search in the common bathroom, the agents and officers opened a wall-mounted safe that contained a loaded firearm, numerous documents identifying PEPPER, and some watches.  PEPPER is a convicted felon who cannot possess firearms or ammunition.  Officers and agents also found the SUBJECT DEVICES both on PEPPER's person and inside the safe, a holster inside PEPPER's Chevy Blazer parked in front of the trailer, and a business card for a firearm dealer in PEPPER's wallet.

8.   After the search, SAs interviewed PEPPER and his girlfriend.  PEPPER's girlfriend guessed that the safe belonged to PEPPER's father who died about a year earlier, but she also stated that she had heard PEPPER access the safe using the safe's digital keypad in the approximately two-and-a-half months that she had lived in the trailer.  PEPPER claimed that the firearm belonged to his deceased father.  PEPPER admitted, though, that he had put the firearm in the safe after his father died.  He also acknowledged that he had hid the safe's physical key in the bathroom rafters.  Finally, he acknowledged that the identifying documents and watches found inside the safe and the holster found in his truck all belonged to him.

## IV. STATEMENT OF PROBABLE CAUSE

9.   Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

A.   **CI Tip About PEPPER**

10.   On or about September 5, 2019, I received information from a confidential informant ("CI") that an individual who goes by "PEPPER" was potentially in possession of a firearm at PEPPER's residence, a trailer located at 905 West La Cadena, Riverside, California 92501. Additionally, the CI stated that he/she had heard PEPPER was recently involved with an act of violence in which PEPPER assaulted an individual with a baseball bat and may have discharged a firearm multiple times in front of his trailer.[1]

11.   I queried law enforcement databases and found a subject with the name Ronald Eugene Pepper, Jr., living in the Riverside area. In one of the subject's photos, he had a tattoo across his chest that said "PEPPER." I learned that PEPPER is a convicted felon and prohibited from possessing firearms or ammunition and that he was currently on California state parole for a conviction under Penal Code Section 273.5 (Inflicting Corporal Injury Resulting in a Traumatic Condition Upon a Victim) with a parole discharge date of October 2020. Finally, I learned that PEPPER listed a parole address at 905 West La Cadena, Space #14, Riverside, California 92501, the same trailer park that the CI had identified as PEPPER's residence.

12.   Given the totality of the information, I coordinated with PACT to conduct a parole search at PEPPER's residence.

---

[1] I include this information from the CI only for background, not to support probable cause for the requested complaint or search warrant.

**B.     The Parole Search**

　　1.    The Trailer

　　13.   On September 10, 2019, other ATF SAs, PACT officers, and I briefed an operation regarding a parole search of PEPPER at his listed parole address. We all knew that PEPPER was on state parole and that parole includes full search terms.

　　14.   Before the search, ATF SA Valerie Atwood watched PEPPER's residence and saw PEPPER working on an older pickup truck in front of the residence. SA Atwood was able to identify PEPPER by his tattoos. SA Atwood also broadcasted the license plate of the pickup truck out to the PACT team, which we learned was registered to a person with initials M.M. in Baldwin Park, California. We also saw a Chevy Blazer parked outside the trailer, and we later learned that PEPPER owned both vehicles.

　　15.   PACT officers then contacted PEPPER while he was working on the pickup truck, told him why they were there, and detained him without incident before beginning the parole search. Officers then searched PEPPER and found one of the SUBJECT DEVICES (the Samsung Galaxy S10e) in his shorts pocket.

　　16.   PEPPER told officers that his grandfather and his girlfriend were inside the trailer. I then walked up to PEPPER, who was seated next to the pickup truck, and asked him what was wrong with the pickup truck. PEPPER advised that he had recently bought the truck and was trying to fix it up.

　　17.   PACT officers knocked on the front door of the trailer and made their presence known to the occupants inside that they were there to conduct a parole search. PEPPER's girlfriend,

later identified as Janelle Bonderer ("Bonderer"), exited the trailer and was escorted outside. Officers than entered the trailer, found PEPPER's grandfather (later identified as Richard Preston ("Preston")) sleeping in the trailer's private back room, and escorted him out of the trailer.

18. Once the trailer was clear, PACT officers began searching. The trailer consisted of two bedrooms (one on each end of the trailer), a common bathroom, and a common living room/kitchen area in the middle of the trailer.

19. Inside the common bathroom, officers found a locked wall-mounted safe that opened either with a code entered on a digital keypad code or a physical key. Given PEPPER's parole status and the fact that the safe was located in a common area in the trailer, officers knew the safe could be searched under PEPPER's parole terms.[2] Before fully opening the safe, officers used a tool to slightly pry it open. While looking inside the slightly pried open door, they saw a firearm inside. I then looked inside and saw the firearm's serial number, had an officer query it through dispatch, and learned that the firearm was reported stolen out of New Mexico in 2016.

20. While searching in the bathroom, Officer Hernandez found a small black and silver circular-type key hidden on top of a two-by-four wooden beam between the wooden beam and the

---

[2] I obtained a copy of PEPPER's parole terms, and they specify that "[y]ou, your residence, and any property under your control are subject to search or seizure by a probation officer, an agent or officer of the California Department of Corrections and Rehabilitation, or any other peace officers, at any time of the day or night, with or without a search warrant, with or without cause."

fiberglass insulation of the roof of the bathroom. Officer Hernandez then successfully opened the safe using the key and confirmed that the safe contained a firearm inside of a black holster. Officer Hernandez inspected the firearm and learned that it was loaded with seven (7) rounds of .45 caliber ammunition. The firearm itself was a .45 caliber Walther handgun, model PPQ, bearing serial number FCB5848.

21. Officer Hernandez continued inspecting the safe and found a California driver's license issued to PEPPER, a birth certificate issued to PEPPER, a copy of a check from HGM Trucking, Inc., issued to PEPPER on April 30, 2019, and the California title for the pickup truck that PEPPER had just told me he had recently purchased.

22. Also inside the safe were two newer black watches, one Citizen and one Nixon, and the other two SUBJECT DEVICES next to the firearm. Finally, the safe also contained old documents belonging to PEPPER's deceased father, Ronald Eugene Pepper, Sr.

2. The Blazer

23. I searched the front seat of PEPPER's Blazer parked outside the trailer per PEPPER's parole search terms. In the front seat area of the vehicle, I found a black handgun holster and a plastic case for an Uncle Mike's handgun holster.

3. PEPPER's Person

24. PACT officers arrested PEPPER at the scene and transported him to Riverside Police Department's Orange Station for questioning and processing. Once at the station, I searched PEPPER's wallet and found a "Warrior One" business card. I am

familiar with Warrior One, a Federal Firearm Licensee operating in Riverside.

**C.  Interviews**

   1.  Preston

   25.  ATF SA Adam Rudolph and I interviewed Preston.  During the interview, Preston advised that he did not know what was inside the safe and has never accessed it.  Preston also stated that he just recently moved into the trailer about two and half months ago and pays approximately $250 a month in rent to PEPPER.  Preston stated that PEPPER's father, Ronald Eugene Pepper, Sr., had passed away over a year ago and speculated that the contents in the safe belonged to him.  However, he also stated that all of PEPPER's father's property, including the safe, the trailer, and the Blazer, passed on to PEPPER when his father died.  Preston also advised that PEPPER had purchased the pickup truck less than a month ago.  Preston finally indicated that he has a criminal record that precludes him from possessing firearms.

   2.  Bonderer

   26.  SA Rudolph and SA Atwood interviewed Bonderer.  Bonderer advised that she has been staying at the trailer off and on for about two months.  Bonderer admitted that she uses marijuana and has since she was twelve years old.  Bonderer also admitted that PEPPER is a regular user of methamphetamine.  Bonderer stated that she does not own a firearm.

   27.  SA Rudolph then asked about the wall mounted safe in the bathroom.  Bonderer guessed that it belonged to PEPPER's

deceased father. Bonderer stated, though, that she had heard PEPPER access the safe multiple times using the safe's digital keypad, the most recent time being approximately two weeks earlier.

28. Bonderer also confirmed that the pickup truck and the Blazer parked in front of the residence belong to PEPPER.

   3. PEPPER

29. I read PEPPER his Miranda rights from an ATF issued form. At the conclusion of reading PEPPER his Miranda rights he agreed to speak with me and signed a Miranda waiver form.

30. PEPPER said he was a felon currently on parole for domestic violence. PEPPER confirmed that his parole address was 905 West La Cadena, Space #14, the same address that ATF SAs and PACT officers searched earlier in the evening.

31. PEPPER advised me that the firearm found in the trailer was originally his father's gun and that his father passed away in August 2018. PEPPER stated that when he moved into the trailer following his father's death, he found the firearm and put it in the safe. PEPPER also stated that he put the keys for the safe up in the ceiling area where Officer Hernandez found them. PEPPER said his father had two other firearms--a shotgun, which he says his ex-girlfriend/wife may have or know where it is and a "7.62 x 54 Russian" rifle that he sold to someone named "Beto."

32. PEPPER stated that he had the gun, which he identifies as a "45" (the correct caliber of the seized firearm found in

9

the safe). PEPPER also told me that he did not want to surrender the gun to law enforcement without compensation.

33. PEPPER mentioned that a dead body was found in the "wash" area down in the wooded area past his trailer a couple weeks ago. PEPPER said he saw the body and that he believed it had been hanging for about three weeks. PEPPER said he took photos of the body with his phone. PEPPER believed that he lived in a bad area, and he stated that he kept a firearm partially for self-defense.

34. I asked PEPPER about the two watches found in the safe, and he confirmed that they belonged to him. PEPPER also told me that his birth certificate was inside the safe. I asked PEPPER about the title of the truck and the copy of a recent check issued to him, and PEPPER stated he told his grandfather to put those items in the safe for him. I also asked PEPPER about the holster and a plastic case made to contain the holster found in the Blazer, and he confirmed that they belonged to him.

35. At the conclusion of the interview, PEPPER was booked into the Riverside County Jail for a parole violation.

**D.   PEPPER's Criminal History**

36. On October 15, 2019, I reviewed certified conviction documents for PEPPER and learned that PEPPER has previously been convicted of the following felony crimes punishable by a term of imprisonment exceeding one year:

37. On or about June 1, 2005, a violation of Health and Safety Code Section 11377(a), Possession of Methamphetamine, in

the Superior Court for the State of California, County of Riverside, Case Number RIF123980;

38. On or about August 6, 2012, a violation of Penal Code Section 273.5(a), Willfully and Unlawfully Inflict a Corporal Injury Resulting in a Traumatic Condition Upon a Spouse or Former Spouse, in the Superior Court for the State of California, County of Riverside, Case Number RIF10000176;

39. On or about August 6, 2012, a violation of Penal Code 597(b), Willfully and Unlawfully Inflict Cruelty and Abuse on an Animal, in the Superior Court for the State of California, County of Riverside, Case Number RIF10005001; and

40. On or about January 15, 2016, a violation of California Penal Code Section 273.5(f)(1), Willfully and Unlawfully Inflict a Corporal Injury Resulting in a Traumatic Condition Upon a Spouse or Former Spouse with a Prior, and Penal Code Section 422, Willfully Threaten Another Person with Great Bodily Injury and Death, in the Superior Court for the State of California, County of Riverside, Case Number RIF1506574.

### E.  Interstate Nexus

41. On September 10, 2019, I examined the firearm and ammunition and confirmed that the firearm and ammunition were manufactured outside of the State of California.  Because PEPPER possessed the firearm and ammunition in California, I believe that his possession affected interstate commerce.

### V.  TRAINING AND EXPERIENCE ON FIREARMS OFFENSES

42. From my training, personal experience, and the collective experiences related to me by other law enforcement

officers who conduct who conduct firearms investigations, I am aware of the following:

    a. Persons who possess, purchase, or sell firearms generally maintain records of their firearm transactions as items of value and usually keep them in their residence, or in places that are readily accessible, and under their physical control, such in their digital devices. It has been my experience that prohibited individuals who own firearms illegally will keep the contact information of the individual who is supplying firearms to prohibited individuals or other individuals involved in criminal activities for future purchases or referrals. Such information is also kept on digital devices.

    b. Many people also keep mementos of their firearms, including digital photographs or recordings of themselves possessing or using firearms on their digital devices. These photographs and recordings are often shared via social media, text messages, and over text messaging applications.

    c. Those who illegally possess firearms often sell their firearms and purchase firearms. Correspondence between persons buying and selling firearms often occurs over phone calls, e-mail, text message, and social media message to and from smartphones, laptops, or other digital devices. This includes sending photos of the firearm between the seller and the buyer, as well as negotiation of price. In my experience, individuals who engage in street sales of firearms frequently use phone calls, e-mail, and text messages to communicate with each other regarding firearms that the sell or offer for sale.

In addition, it is common for individuals engaging in the unlawful sale of firearms to have photographs of firearms they or other individuals working with them possess on their cellular phones and other digital devices as they frequently send these photos to each other to boast of their firearms possession and/or to facilitate sales or transfers of firearms.

  d. Individuals engaged in the illegal purchase or sale of firearms and other contraband often use multiple digital devices.

## VI. TRAINING AND EXPERIENCE ON DIGITAL DEVICES

  43. As used herein, the term "digital device" includes the SUBJECT DEVICES.

  44. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

  a. Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet. Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time. Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

b. Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device. That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them. For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

c. The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it. For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

d. Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions. Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

45.  Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data during a search of the premises for a number of reasons, including the following:

a.  Digital data are particularly vulnerable to inadvertent or intentional modification or destruction. Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

b.  Digital devices capable of storing multiple gigabytes are now commonplace. As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

//
//
//

## VII. CONCLUSION

46. For all of the reasons described above, there is probable cause to believe that PEPPER has committed a violation of 18 U.S.C. § 922(g)(1) (Felon in Possession of a Firearm or Ammunition). There is also probable cause that the items to be seized described in Attachment B will be found in a search of the SUBJECT DEVICES described in Attachment A.

Paul Kirwan, Special Agent
Bureau of Alcohol, Tobacco,
Firearms, and Explosives

Subscribed to and sworn before me this 28 day of October, 2019.

UNITED STATES MAGISTRATE JUDGE